**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **v.** | ) | **Criminal Number: 3:26-cr-2** |
| | ) | **Hon. Roderick C. Young** |
| **RANDON ALEXANDER SPRINKLE,** | ) | **Sentencing Date: September 3, 2026** |
| | ) | |
| **Defendant.** | ) | |

**MR. SPRINKLE'S OBJECTION TO THE APPLICATION OF U.S.S.G. §2G2.2.(b)(7)(D)**

The defendant, Randon Alexander Sprinkle, by and through his counsel Javionté Johnson, respectfully submits his objection to the calculated guidelines as presented in the Pre-Sentence Report ("PSR").

The United States Probation Officer calculated the advisory guideline range as **151 – 188** months of imprisonment, based on a total offense level of **34** and a criminal history category of **I**. This calculation is based on application of U.S.S.G. §2G2.2. PSR ¶ 25. Mr. Sprinkle objects to the application of the specific enhancement pursuant to U.S.S.G. §2G2.2.(b)(7)(D). If Mr. Sprinkle's objection is sustained, the newly calculated guideline range would be **108 – 135** months of imprisonment, based on a total offense level of **31** and a criminal history category of **I**.

**APPLICABLE LAW**

In *Kisor v. Wilkie*, the United States Supreme Court altered the analysis courts apply to federal agency interpretations of their own regulations. *Kisor v. Wilkie*, 588 U.S. 558 (2019). The *Kisor* Court held that courts are only required to defer to an agency's interpretations of its own regulation if the language of the regulation is, at a minimum, "genuinely ambiguous." *Kisor*, 588 U.S. at 573. If the regulation does not meet this category of "genuinely ambiguous" then the agency interpretation of the regulation requires no deference. This shift in analytical framework as laid

out in *Kisor* has been adopted by the Fourth Circuit. *See United States v. Boler*, 115 F.4th 316, 322 (4th Cir. 2024); *see also United States v. Mitchell*, 120 F.4th 1233, 1240 (4th Cir. 2024) *citing United States v. Campbell*, 22 F.4th 438, 445 & n.3 (4th Cir. 2022).

The Supreme Court in *Kisor* did not provide a definition of "genuinely ambiguous," but it directed courts that a regulation could only be considered genuinely ambiguous "…after a court has resorted to all the standard tools of interpretation" to determine the regulations plain meaning. *Kisor*, 588 U.S. at 573. The *Kisor* Court stated a regulation is not ambiguous if the "regulation…just means what it means…" and if the regulation has "only one reasonable construction… ." *Id*. at 576. One of the "standard tools of interpretation" the *Kisor* Court highlighted was that courts could consider the "text, structure, history, and purpose of a regulation, in all the ways it would if it had no agency to fall back on… ." to resolve any "ambiguities out of the box." *Id*. at 575.

## <u>ARGUMENT</u>

### 1. Mr. Sprinkle Objects to the +5-Level Guidelines Increase as Currently Calculated in The PSR For Possessing Over 600 Images.

Mr. Sprinkle was found to be in possession of a total of 43 CSAM "images" or visual depictions. Mr. Sprinkle currently has a +5-level enhancement applied based on the possession of 29 CSAM images and 14 CSAM videos. PSR ¶ 17. He should only have received a +2-level increase, pursuant to U.S.S.G.§ 2G2.2(b)(7)(a), not the +5-level currently assigned. The Application Notes to § 2G2.2(b)(7), as noted in the PSR, equate a video to 75 "images." U.S.S.G. §2G2.2, Cmmt. N. (6)(b)(ii). However, following the United States Supreme Court decision in *Kisor v. Wilkie*, this commentary is owed no deference as the language of "image" as used in the Guideline itself is not ambiguous. Further, even if this Court found the language of "image" was

ambiguous, the Commentary's determining the number of images per video of 75 is not based on a reasonable interpretation of its own guideline.

Mr. Sprinkle asks this Court to adopt the analysis and findings as posited by Judge Robert E. Payne of this Honorable Court in *United States v. Roberts*, Criminal No. 3:24-cr-137, 787 F.Supp.3d 219 (E.D.Va. June 16, 2025) on this exact issue. In *Roberts*, the court correctly held that the language of "image" in §2G2.2(b)(7) is not ambiguous under the *Kisor* analysis, and therefore no deference is owed to the Sentencing Commission commentary on this Guideline, including the commentary that each video image is 75 actual images for purposes of the enhancement. *Id*. at 232. The court in *Roberts* further held, in the alternative, that even if the word "image" was genuinely ambiguous that the interpretation of this regulation by the Sentencing Commission is not reasonable and therefore is further owed no deference in the application of this enhancement. *Id*. at 245. While Mr. Sprinkle maintains no deference is due to the Sentencing Commission commentary as the word "image" is not genuinely ambiguous, he also agrees that any interpretation where one video equals 75 images is not reasonable, and the commentary would not apply even if this Court was to find the term "image" was genuinely ambiguous. The commentary deserves no deference from this Court on the application of this enhancement.

i. <u>The Word "Image" Is Not Genuinely Ambiguous and This Court Owes No Deference to The Sentencing Commission Commentary on This Issue.</u>

U.S.S.G.§2G2.2(b)(7) states that

If the offense involved---

(A) at least 10 images, but fewer than 150, increase by **2** levels;

(B) at least 150 images, but fewer than 300, increase by **3** levels;

(C) at least 300 images, but fewer than 600, increase by **4** levels; and

(D) 600 or more images, increase by **5** levels

The language of the enhancement itself does not reference that a video is the equivalent of 75 images, and in fact makes no such equations for videos or other forms of media outside the reference to "images." When determining if a regulation is "genuinely ambiguous" courts must use all the traditional tools of interpretation. This includes utilizing the plain meaning of words; as well as the "text, structure, history, and purpose" of the enhancement as to where an enhancement, as a regulation, is genuinely ambiguous. *Kisor*, 588 U.S. at 575.

The plain meaning of the word image is not ambiguous.[1] In fact, the Sentencing Commission commentary implicitly acknowledges this in its interpretation of the word by stating an image is a "visual depiction." U.S.S.G. §5G2.2 cmt. N.6(a). Also, the language for the enhancement itself comes directly from Congress by way of legislative insertion, not through the Sentencing Commission promulgation process. *See* PROTECT Act*, Pub. L. No. 108-21, 117 Stat. 650, 673 (2003).* As the Court notes in *Roberts*, this intuits a discussion of other statutory context or references to the word "image" in the same statute, utilizing, as directed by *Kisor*, canons of statutory construction. *Roberts*, 787 F.3d at 233-234. Again, following the logic in *Roberts* the statute criminalizing possession of child pornography, 18 U.S.C. §2252A(a)(5)(b), criminalizes knowing possession of "any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography." 18 U.S.C. §2252A(a)(5)(b).

As the *Roberts* Court rightly notes, this shows Congress' intent to define the parameters of the media that contain images, e.g. a book or a videotape. *Id.* at 233-234. This definition is compared to the definition of child pornography itself, which is found in the neighboring statute,

[1] Mr. Sprinkle would note that at least two Circuit Courts have found the language of "image" ambiguous, therefore deferring to the commentary's equation of one video to 75 images. *See United States v. Phillips*, 54 F.4th 374, 379 (6th Cir. 2022); *United States v. Peralta*, No. 23-13647, 2024 WL 4603297, at *2 (11th Cir. Oct. 29, 2024).

18 U.S.C. §2256(8), and defines child pornography as "any visual depiction, including any photograph, film, *video*, picture, or computer or computer-generated image or picture…of sexually explicit conduct, were-such visual depiction is a digital image, computer image, or computer-generated image." 18 U.S.C. §2256(8)(b). The statute defines visual depiction as specific images, including single videos. These statutory definitions, read *in pari materia* as required by statutory canons of construction, establish that the Congressional intent with the image enhancement under U.S.S.G. §2G2.2(b)(7) is that one video is one image.

It is further worth noting, as the *Roberts* Court did, that Congress is assumed to have chosen its words with intent. If Congress had wished to impose additional consequences for a video, versus an image, it could have done so either in the statute itself, or in the guidelines enhancement that Congress itself imposed. But Congress did not do this. The plain meaning of image as one video remains. [2]

ii. <u>One "image" under §2G2.2(b)(7) means one photograph or one video.</u>

Unlike other Circuit Courts who, despite embracing that "image" was not genuinely ambiguous, continued to inflate the term by equating one video frame to one image,[3] Mr. Sprinkle agrees with the court's rationale in *United States v. Roberts* that one video is one image. *Roberts*, 787 F.Supp. at 234-236. To hold as other courts have that one video frame equates to an image is not a logical reading of that term. If this were the case, then a single video, even one of a few seconds, would receive the maximum level increase under the enhancement pursuant to §2G2.2(b)(7). *See Roberts*, 787 F.Supp.3d at 241. This would render the enhancement without

[2] The *Roberts* Court also reviewed various definitions of image, as well as the absence of any text or history for the enhancement itself in the Congressional record, to support its legal conclusion that "image" is not genuinely ambiguous. Mr. Sprinkle relies on this well-reasoned legal analysis, and related conclusions, as well in his objection. *See Roberts*, 787 F.Supp.3d at 235-237.
[3] See e.g., *United States v. Haggerty*, 107 F.4th 175, 178 (3d Cir. 2024).

purpose, with the maximum enhancement applicable in every case where a single video is possessed, and this is an absurd result.

iii. <u>Even If This Court Finds the Word "Image" Genuinely Ambiguous, The Sentencing Commission Commentary Equating One Video To 75 Images Is Not a Reasonable Interpretation of Its Own Regulation and Should Receive No Deference.</u>

The Court's opinion in *Roberts* is again instructive on this issue. As the *Roberts* Court notes, there is no basis or data provided in the Sentencing Commission commentary as to where the number 75 originates. *Roberts*, 787 F.Supp.3d at 227. And the practical application of these 75 images to 1 video ratio leads to absurd results. For example, it only takes *eight videos* for a defendant to receive the maximum amount of +5 points under the U.S.S.G. §2G2.2(b)(7) enhancement as contemplated by the 75:1 ratio. A defendant with 8 videos, or a defendant with 14 videos as Mr. Sprinkle possessed, would receive the same +5-level enhancement as a defendant with 10,000 videos. If the intent was to penalize the more culpable with the Specific Offense Characteristic, i.e. the person with more videos versus the person with less, this is not accomplished by equating one video with 75 images.

Further, as the *Roberts* Court notes the content of the videos themselves are not connected to the number in any way. *See Roberts*, 787 F.Supp.3d at 226. Someone possessing 9 photographs of very abusive acts would only receive the +2 enhancement, versus an individual possessing 2 of videos of the same category of abusive acts would receive the +3 enhancement, and so on. *Id*.

The Specific Offense Characteristic enhancement under U.S.S.G.§ 2G2.2(b)(7) was added by Congressional Act, via the PROTECT act referenced above. Not through the normal route of Sentencing Guideline data driven recommendation. When the enhancement was added, the Sentencing Commission called for comment in the Federal Register, noting the PROTECT Act did not define what constituted an "image," or how "videos, films, or AVI files" should be

considered. Sentencing Guidelines for United States Courts, 68 Fed. Reg. 75353 (Dec. 30, 2003), *available at 03-31755.pdf (last visited Dec. 19, 2025).* As noted by the *Roberts* Court interested parties submitted comments, including the Federal Public and Community Defenders Officer which offered comments that an image is one picture or video, and the Department of Justice argued that a video should be treated more seriously. *Roberts*, 787 F.Supp.3d at 245-246. But the DOJ submission didn't even explain their position or posit a certain number of images to be counted for each video. In November 2004 the Sentencing Commission added the commentary at issue here, defining images for purposes of §2G2.2(b)(7) and specifying that each video equates to 75 images. At no time did the Commission explain either rationale for these amendments, outside of a comment that the number 75 was somehow centered in the image table that Congress had legislatively imposed into the guidelines themselves. Sentencing Guidelines for United States Courts, 69 Fed. Reg. 29005 (May 19, 2004). It is hard to defend the 75:1 ratio as a reasonable interpretation of the regulations of the Sentencing Commission where the 75:1 ratio truly appears to be an arbitrary number plucked out of thin air. This results in any 75:1 ratio interpretation of the word "image" if this court finds that word genuinely ambiguous is not a reasonable interpretation. The Sentencing Commission commentary imposing this 75:1 deserves no deference from this court.

iv. Mr. Sprinkle Possessed 43 Images and Should Receive Only A +2 Enhancement Under U.S.S.G. §2G2.2(B)(7)(A).

When this Court gives the word "image" its plain and ordinary meaning by not deferring to the Sentencing Commission commentary under §2G2.2(b)(7), it will see that Mr. Sprinkle possessed 43 images of CSAM. This results in a Specific Offense Characteristic enhancement of +2 pursuant to §2G2.2(b)(7)(A).

## CONCLUSION

If this Court were to sustain Mr. Sprinkle's objection to the currently calculated guidelines, the newly calculated guideline range would be **108 – 135** months of imprisonment, based on a total offense level of **31** and a criminal history category of **I**.

Respectfully submitted,
RANDON ALEXANDER SPRINKLE

By: /s/
Counsel

Javionté Johnson, Esq.
New York Bar # 5720214
Attorney for Randon Alexander Sprinkle
Assistant Federal Public Defender
Office of the Federal Public Defender
Eastern District of Virginia
701 E. Broad Street, Suite 3600
Richmond, VA 23219
(804) 565-0832
(804) 800-4214 (fax)
Javionte_Johnson@fd.org