**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | **Docket No.: 0422 3:26CR00002-001** |
| | : | |
| **v.** | : | |
| | : | |
| **RANDON ALEXANDER SPRINKLE** | : | **HONORABLE Roderick C. Young**<br>**Chief United States District Judge** |

**AFFIDAVIT OF DAWN FERDULA**

I, Dawn Ferdula, hereby declare under penalty of perjury that the following is true and correct.

**STATEMENT OF EXPERTISE**

- I am the Founder of BOPExperts, which I started after retiring from the Federal Bureau of Prisons (BOP) in August 2022.

- I am the Director of Case Management for the Federal Prison Education and Reform Alliance.

- I was employed within the BOP for over twenty-five years, working in classification, correctional programs and treatment, gang drop out programming, as well as, operated as a Discipline Hearing Officer for 7 years.

- During my career, I managed a caseload within a prison setting as a Correctional Treatment Specialist. I was responsible for counseling, security classification, program placement/evaluation and re-entry. This involved managing offenders with sentences imposed under both-federal "old law" and "new law" as well as the DC Code. I had full time collateral administrative responsibilities in training case management staff, mentoring, policy writing, conducting facility audits and overseeing institutional programs. I have worked in Minimum (camp), Low, Medium, Administrative (pre-trial and high security), and Witness Security units. I was the Correctional Treatment Specialist for the pilot gang drop out program in the BOP. I also operated as a Disciplinary Hearing Officer (DHO), wherein, I conducted countless disciplinary hearings, determining innocence or guilt for individuals accused of violating BOP rules and regulations.

- I hold a bachelor's degree in Psychology, with a Minor in Criminal Justice.

## SCOPE OF THE REVIEW AND FINDINGS

I have been asked by defense counsel to review the pre-sentence report, and provide the court with information regarding his classification, as well as recommendations regarding his designation within the Federal prison system. I offer my opinion from a correctional treatment and classification perspective.

## INMATE SECURITY CLASSIFICATION

The BOP classifies facilities into several categories including Minimum security (camp), Low and Medium security (FCI's), High security (USP) and Administrative (MCC/MDC/FDC & Medical Centers). Federal Medical Centers house all security levels including high security. Inmates are also assigned a security level; however, female offenders do not have a medium security level category. Inmates are classified based on a point system and Public Safety Factors (PSF's) to determine the required level of control and supervision needed for facility placement. They are designated based on their security, program and/or medical needs.

Below is a chart based on the BOP classification manual, (Program Statement # 5100.08, *Inmate Security Designation and Custody Classification*)

| Security Level | Male | Female |
|---|---|---|
| **MINIMUM** | 0-11 Points | **0-15 Points** |
| LOW | 12-15 Points | 16-30 Points |
| MEDIUM | 16-23 Points | **N/A** |
| HIGH | 24 + Points | 31 + Points |

Security points alone do not determine a security level because the BOP classification policy includes what are referred to as "public safety factors" (PSF's) which can increase a security classification regardless of the security scoring. Conversely, the BOP can also apply what is referred to as a "*management variable*" which can override the security to effectuate designation outside of the scored security range to achieve a specific correctional goal. For instance, a person considered a flight risk can be assigned to a secure, FCI despite the security scoring.

I have estimated the classification and determined Mr. Sprinkle will be assigned ten security points, rendering him a Minimum Security Level. However, the court should be aware, Mr. Sprinkle will be scored with a Public Safety Factor of Sex Offender, which will ultimately increase his level to a Low Security.

As stated, the BOP will consider the offense of Distribution of Child Pornography to be of the High severity (5 points). The remaining points are determined by his criminal history (0 points), age (4 points), history of violence (0 points) any current pending charge (0 points) and having a history of drug and/or alcohol use within the last five years (1 point). He will only be eligible for a minimum-security facility if the Bureau waives the sex offender PSF. This is extremely rare.

Minimum security environments use dormitory housing and do not have cells, walls or fences. Low security facilities are secure facilities that house offenders with sentences over ten years, non-citizens, sex offenders and individuals with more of a criminal orientation with a significant prior criminal record. The BOP policy generally precludes camp placement for individuals convicted of a sex offense and does not differentiate between non-contact cases such as this case and more predatory contact offenses such as trafficking, rape, or those convicted of travelling to meet with an underage victim for the purpose of engaging in a sexual activity.

As the Court is aware, while medium and high security facilities are notorious for violent inmate-on-inmate assaults, especially towards inmates who have been involved in child sex offenses, it is not unheard of in lower security settings. Accordingly, inmates with offenses like Mr. Sprinkle are frequently assaulted, placed into protective custody for their safety, then are eventually transferred out of protective custody, and the cycle repeats. It is a difficult problem that has existed in BOP for some time and is virtually uncorrectable. Based on my review, Mr. Sprinkle will most likely be designated to a low security facility. Such secure facility placement will be problematic for Mr. Sprinkle given his sex offense classification in combination with his prior history of anxiety. While low security facilities are not generally as predatory as medium and high security penitentiaries, they have similar sub-cultural elements that will be very difficult for him to navigate and adjust to.

## MEDICAL/MENTAL HEALTH CLASSIFICATION & ISSUES

Inmates are assigned a medical classification (both physical health and mental health) during the designation process which is a four-level system referred to as "Care Levels." The BOP publishes a clinical guide entitled Care Level Classifications for Medical and Mental Health Conditions which describes the care levels as indicated below:

**CARE LEVEL 1:** Care Level 1 inmates are less than 70 years of age and are generally healthy.

**CARE LEVEL 2**: Care Level 2 inmates are stable outpatients who require clinician evaluations monthly to every 6 months. Their medical and mental health conditions can be managed through routine, regularly scheduled appointments with clinicians for monitoring.

**CARE LEVEL 3**: Care Level 3 inmates are outpatients who have complex, and usually chronic, medical or mental health conditions and who require frequent clinical contacts to maintain control or stability of their condition, or to prevent hospitalization or complications. They may require assistance with some activities of daily living (ADLs) that can be accomplished by inmate companions.

**CARE LEVEL 4**: Care Level 4 inmates require services available only at a BOP Medical Referral Center (MRC), which provides significantly enhanced medical services and limited inpatient care. Functioning may be so severely impaired as to require 24-hour skilled nursing care or nursing assistance. Example conditions: Cancer on active treatment, dialysis, quadriplegia, stroke or head injury patients, major surgical treatment, and high-risk pregnancy.

In my experience in BOP case management, I believe his mental health history (or lack thereof) will cause the Bureau to classify him as a mental health care level 1. Unfortunately, only those characterized as Level 3 and higher are eligible to receive regular mental health treatment. As a Care level 1 he will, at best, only be seen by a mental health professional on a semi-annual basis. These meetings tend to be more of a check-in without any long-term individual counseling. Although each housing unit is assigned a "correctional counselor," such an individual functions more like a correctional officer with a partially administrative role. Such individuals do not have mental health training, do not provide clinical services, and are not required to have a college degree or post-high school educational or vocational training.

**SEX OFFENDER MANAGEMENT AND TREATMENT:**

The Bureau of Prisons maintains a comprehensive sex offender management strategy, implemented to effectively manage its population of sex offenders, and manage the risks posed by these offenders to the general public. With the passage of the Walsh Act, as codified in 18 U.S.C. § 3621(f), Sex Offender Management, the BOP has further expanded its monitoring, evaluation, and treatment programs for sex offenders. As required by the Walsh Act, a specialized sex offender program is offered in each BOP region. Inmates with a history of sexual offenses may be designated to the Sex Offender Management Program (SOMP), at one of several institutions: FMC Devens; United States Penitentiary (USP) Marion; USP Tucson; Federal Correctional Institution (FCI) Seagoville; FCI Elkton, FCI Petersburg; and FCI Marianna. Assignment is made in accordance with the security level of the individual.

An inmate amenable to treatment is offered participation in the Sex Offender Treatment Program (SOTP-NR) offered at all SOMP institutions. SOTP-NR offers inmates individualized nonresidential treatment, ordinarily involving six to eight hours of programming per week, over a six month period. All participation in non-residential treatment services is voluntary.

Inmates at any BOP institution may choose to volunteer for an intensive residential sex offender treatment program (SOTP-R) offered at FMC Devens. The BOP reviews each application for the SOTP-R, considering such factors as the seriousness of the inmate's sexual offending history, the inmate's disciplinary record, and the amount of time remaining on the inmate's sentence. The SOTPR is a therapeutic community, housed in a 112-bed specialized unit. The program employs a wide range of cognitive-behavioral and relapse prevention techniques to help the sex offender manage his sexual deviance both within the institution and in preparation for release. Ordinarily, participants complete the program in 12 to 18 months.

## CONCLUSION

Mr. Sprinkle faces many challenges in any federal prison environment given his offense behavior and being his first term of incarceration. While the BOP does its best, and has instituted general controls and policies in place to protect vulnerable offenders, there is the potential for predation and/or the repeated cycle of protective custody, isolation, transfer, then repeat. Mr. Sprinkle will also be housed among people with more extensive criminal orientation, which will create its own significant challenges that Mr. Sprinkle will have to learn to navigate. The BOP does attempt to accommodate judicial recommendations and the following language is suggested for inclusion in the Judgement of Conviction:

*"The court finds the defendant is in need of sex offender treatment. Accordingly, the court strongly recommends the defendant be incarcerated at the facility in Elkton, Ohio, where he can be more safely housed while also participating in sex offender treatment for low security adults in custody. Should the BOP not be able to accommodate the court's recommendation, the court asks to be notified in writing as to the rationale of why the court's recommendation could not be met."*

Executed on this 18th day of August 2026

Dawn Ferdula [signature]