IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RANDON ALEXANDER SPRINKLE,<br><br>Defendant. | Case No. 3:26-cr-2-RCY |

**UNITED STATES' POSITION ON SENTENCING**

The United States of America, through undersigned counsel, hereby submits its position with respect to sentencing factors for Defendant Randon Alexander Sprinkle ("Defendant"). The United States has reviewed the defendant's Presentence Report ("PSR") and has no objections to that report. The PSR has calculated a Total Offense Level ("TOL") of 34 (PSR ¶ 87), a Criminal History Category of I (PSR ¶ 88), and a guidelines range of 151–188 months' imprisonment. For reasons more fully explained below, the United States respectfully asks this Court to impose a sentence at the middle of the guidelines of 168 months' imprisonment. Such a sentence properly reflects the factors referenced in 18 U.S.C. § 3553(a).

## I. Discussion

During sentencing, federal courts must follow a multistep process that analyzes both procedural and substantive concerns. First, the court must correctly calculate the applicable Guidelines range. *See Gall v. United States*, 552 U.S. 38, 49 (2007). Second, "the court must determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors." *United States v. Diosdado-Star*, 630 F.3d 359, 363 (4th Cir. 2011) (internal quotation marks omitted). To the extent the Court deems some deviation from the Guidelines range appropriate, the Court must

give serious consideration to the extent of the deviation and must adequately explain it "to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.* at 365 (internal quotation marks omitted). In all events, the Court must impose a sentence that takes into consideration the factors listed under 18 U.S.C. § 3553(a). *See id.* at 364.

Under 18 U.S.C. § 3553(a), "[t]he Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. In determining a particular sentence to be imposed, the Court shall consider:

> (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; and
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The factors also include "the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct" and "the need to provide restitution to any victims of the offense." *Id.* § 3553(a)(6), (7)[1].

[1] Section 3553(a) also requires consideration of the kinds of sentences available, the applicable Guidelines range, and pertinent policy statements issued by the Sentencing Commission. *See* 18 U.S.C. § 3553(a)(3)(4), (5).

## II. THE SENTENCING FACTORS UNDER 18 U.S.C. § 3553 SUPPORT A GUIDELINE RANGE SENTENCE.

To arrive at the appropriate sentence, "the sentencing court must apply the relevant § 3553(a) factors to the specific circumstances of the case before it." *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009).

### A. Nature and Circumstances of the Offense

In the Statement of Facts ("SOF") that accompanied his Plea Agreement and is incorporated in the PSR at paragraph 8, Defendant admitted to sending a video of a prepubescent boy being penetrated simultaneously anally and orally by two adult males to a Task Force Officer ("TFO") acting in an online undercover ("OCE") capacity. Defendant sent the video not knowing the OCE was undercover law enforcement and after Defendant initiated a conversation with the OCE on social media. *See* PSR ¶ 8. Defendant told the OCE that Defendant was "Mostly into Yng, rape, incest . . ." and expressed an interest when the OCE claimed to have sexually exploited his nine-year-old son. *Id.* Defendant described abuse of a nine-year-old child as "hot" and asked if the OCE had had sex with his son yet. *Id.* In addition to the child pornography video that Defendant distributed to the OCE, investigators found 29 images and 14 videos of child pornography on Defendant's phone[2] and 2 archived child pornography files on one of Defendant's laptops. *Id.*

In addition, as described in paragraphs 9 through 16, Defendant made various statements during an interview with Federal Bureau of Investigation ("FBI") agents. Defendant minimized his distribution and possession of child pornography by describing himself as having certain "fetishes" and "kinks" and referring to minor children that he is sexually attracted to as "twinks."

[2] The child pornography images and videos from Defendant's phone were forensically recovered temporary files saved to his phone revealing Defendant's online browsing history or application or operating system use.

*See* PSR *See* PSR ¶¶ 10–16. But Defendant also admitted to saying to the OCE, "Proud pedo here." *Id.* at ¶ 14. And Defendant admitted to talking about going to Washington, D.C., where he believed the OCE lived with his nine-year-old son, after Defendant told the OCE that Defendant's favorite age range is "probably toddler to elementary school" and asked the OCE, "Share your son or nah?" *Id.* at ¶ 15.

**B. History and Characteristics of the Defendant**

To Defendant's credit, he has no prior criminal history. PSR ¶¶ 39–44. He is 31 years old and was born in Maryland. PSR ¶¶ 45–64. His biological parents were not married and he was told that his biological mother was a heavy drug user. *Id.* Defendant was placed into foster care by Child Protective Services when he was approximately two years old because he was neglected and had lacerations on his legs. *Id.* At some point after he was placed into foster care, he was placed with James and Deborah Sprinkle as foster parents. *Id.* When Defendant was approximately five years old, the Sprinkles adopted him. *Id.* He described his upbringing with the Sprinkles as middle-income and working class, noting that although his parents worked to support the family, he never wanted for anything. *Id.* Defendant characterized his family life as close, but also reported that he was sexually abused by a cousin when Defendant was approximately 16 or 17 years old. *Id.*

Defendant first left home when he was 19 years old and moved to Richmond for work when he was approximately 24 years old in 2019. *Id.* He graduated from a dual high school and college-credit program in 2014. *Id.* at ¶ 75. At the time he graduated, he had earned one year of college course work. *Id.* By approximately 2020, he had started working in the political field, as a legislative assistant from January until March 2020. *Id.* at ¶¶ 77–82. He continued to work for various political entities from August 2020 through October 2023, and then created his own consultancy entity, Alexander Strategies, LLC, in 2024. *Id.* He was self-employed running that

entity until he started working at a law firm in 2025, Khanna PLLC, where he worked until his arrest. *Id.*

Defendant reported regular alcohol consumption and using illicit drugs just a few times in his life. *Id.* at ¶¶ 72–74. He received a certificate from Alcoholics Anonymous at Northern Neck Regional Jail on July 6, 2026. *Id.* Defendant is in good physical health, although he reported suffering from anxiety and reported that he is currently prescribed Sertraline. *Id.* at ¶¶ 65–71.

**C. Seriousness of the Offense**

The distribution of child pornography is a profoundly serious offense that not only violates the dignity and safety of children but also contributes to a global crisis of child sexual exploitation. This crime involves perpetrators, such as Defendant, using digital platforms to spread explicit material of minors, often material that was created under duress. The prevalence of such offenses is alarmingly high, and the long-term effects on victims are devastating.

Recent studies have highlighted the widespread nature of online child sexual exploitation and abuse. A global meta-analysis published in The Lancet[3] that encompassed 123 studies across 57 countries found that approximately 1 in 12 children, or 8% globally, have been subjected to online sexual exploitation or abuse in the past year. Specific forms of abuse include online solicitation (12.5%), non-consensual sharing of sexual images (12.6%), online sexual exploitation (4.7%), and sexual extortion (3.5%).[4] According to a 2024 study conducted by the

[3] https://www.thelancet.com/journals/lanchi/article/PIIS2352-4642(24)00329-8/abstract

[4] https://news.gsu.edu/2025/01/22/study-estimates-1-in-12-children-subjected-to-online-sexual-exploitation-or-abuse/

University of Edinburgh's Childlight Institute, as many as 300 million children per year experience some form of online sexual abuse.[5]

The repercussions of online sexual exploitation are profound and enduring. Victims often experience a range of psychological and emotional issues, including anxiety, depression, post-traumatic stress disorder (PTSD), and suicidal ideation. These effects can persist into adulthood, affecting relationships, self-esteem, and overall quality of life.

A 2023 study published in the journal *Frontiers in Psychology* examined the prolonged impact of online sexual abuse and found that victims frequently face difficulties in interpersonal relationships, struggles with self-acceptance, and challenges in rebuilding their sense of identity[6]. Indeed, a 2025 report published by the Australian Institute of Criminology indicates that childhood experiences of online sexual exploitation have been linked to an increased likelihood of revictimization later in life, highlighting the cyclical nature of abuse and the critical need for early intervention[7].

**D. Need for the Sentence to Reflect the Seriousness of Offense, Promote Respect for the Law, Provide Just Punishment, Deter Future Criminal Conduct, and Protect the Public from Future Crimes of the Defendant**

Defendant did not simply knowingly participate in a serious crime. His distribution of child pornography affects an actual child and his interest in "[s]har[ing]" the OCE's fake nine-year-old son, including discussing actually going to D.C., demonstrates the seriousness of Defendant's offense and conduct that needs to be deterred. A sentence at the middle of the

---

[5] https://www.childlight.org/uploads/publications/into-the-light_2025-01-31-092530_brzc.pdf

[6] https://pmc.ncbi.nlm.nih.gov/articles/PMC10627921/

[7] https://www.aic.gov.au/sites/default/files/2025-01/ti710_impacts_of_sexual_extortion_on_minors.pdf

guidelines of 168 months is needed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

When considering the § 3553(a) factors for deterrence, both Defendant specifically and the public generally, as well as protection of the community, some deeper examination is warranted. An important sentencing factor for Defendant is protection of the community. The facts strongly indicate that Defendant is unable to control his urge to sexually offend against children, particularly considering his inability to fully recognize the wrongfulness of his conduct.

Regarding the general deterrence of others, to the extent such deterrence is possible, the Court must also consider how to deter others as a general matter from engaging in similar conduct. *See, e.g.*, *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionally minimized."). Absent the imposition of a significant incarceration sentence for the defendant, general deterrence — "the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow" — will not be achieved. *United States v. Bergman*, 416 F. Supp. 496, 499 (S.D.N.Y. 1976). A sentence of 168 months' incarceration would promote respect for the law and send the appropriate message to both Defendant and others that those who engage in this conduct will be caught and punished significantly.

**E. Substance Abuse and Mental Health Treatment or Vocational Training**

All appropriate mental health treatment or vocational training is recommended for Defendant.

**F. Need to Avoid Unwarranted Sentencing Disparities**

Section 3553(a)(6) directs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Because every defendant's situation is unique in some respects, there will always be disparities between defendants. The key thing for courts to avoid is "unwarranted" disparities.

The goal of § 3553(a)(6) is "to eliminate unwarranted sentencing disparity *nationwide*," not disparity between codefendants. *United States v. Withers*, 100 F.3d 1142, 1149 (4th Cir. 1996) (emphasis added); *see also United States v. Simmons*, 501 F.3d 620, 623-24 (6th Cir. 2007) (collecting cases). The Fourth Circuit has repeatedly held that not all disparities are unwarranted and admonished against case-by-case comparisons. *See United States v. Friend*, 2 F.4th 369, 382–83 (4th Cir.), cert. denied, 142 S. Ct. 724 (2021) ("Courts have repeatedly made clear that comparisons of sentences may be treacherous because each sentencing proceeding is inescapably individualized." (*quoting United States v. Rivera-Santana*, 668 F.3d 95, 105 (4th Cir. 2012)).

Viewed through this analytical framework, there are no apparent reasons, compelling or otherwise, suggesting that a guidelines range sentence for Defendant would create an unwarranted disparity with other defendants with similar records who have been found guilty of similar conduct.

## III. CONCLUSION

Accordingly, for the foregoing reasons, this Court, after considering the appropriate guideline range and the sentencing factors set forth in 18 U.S.C. § 3553(a), should sentence Defendant to a term of imprisonment of 168 months, at the middle of the guidelines range.

Respectfully submitted,

TODD W. BLANCHE
Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

By: /s/
Ellen H. Theisen
Virginia Bar Number 94806
Assistant United States Attorney
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Phone: 804-819-5400
Fax: 804-771-2316
Ellen.Hubbard.Theisen@usdoj.gov